ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

September 24, 2003

The Honorable James L. Keffer
Chair, Committee on Economic Development
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910

Opinion No. GA-0107

Re: Whether Long Island, a spoil island directly south of the City of Port Isabel, is within that city's extraterritorial jurisdiction (RQ-0061-GA)

Dear Representative Keffer:

You ask whether Long Island, a spoil island directly south of the City of Port Isabel, Texas, is within that city's extraterritorial jurisdiction.

Your request is a response to a disagreement between the City of Port Isabel (the "City") and the Village of Long Island (the "Village"), an unincorporated area located on the spoil island called Long Island. In 2002, officials of the Village filed with the county judge of Cameron County an application to incorporate. The City opposes the incorporation on the ground that the Village is within the City's extraterritorial jurisdiction.

Section 42.021 of the Local Government Code provides that "[t]he extraterritorial jurisdiction of a municipality is the unincorporated area that is contiguous to the corporate boundaries of the municipality and that is located: . . . within one-half mile of those boundaries, in the case of a municipality with fewer than 5,000 inhabitants." TEX. LOC. GOV'T CODE ANN. § 42.021(1) (Vernon 1999). According to the 2000 census, the City has a population of 4,865. *See* BUREAU OF THE CENSUS, U.S. DEP'T OF COMMERCE, 2000 CENSUS OF POPULATION: General Population Characteristics (population of Port Isabel: 4,865), *available at* http://www.census.gov/ (last visited Sept. 18, 2003). You indicate that the "Village is one-half mile of the southern city limits of Port Isabel and, therefore, . . . is considered within Port Isabel's ETJ [extraterritorial jurisdiction]."[1] Section 42.041(a) of the Local Government Code states that "[a] municipality may not be incorporated in the extraterritorial jurisdiction of an existing municipality unless the governing body of the existing municipality gives its written consent by ordinance or resolution." TEX. LOC. GOV'T CODE ANN. § 42.041(a) (Vernon 1999). The City has not given its consent to the Village's incorporation.

---

[1]Letter from Honorable James L. Keffer, Chair, House Committee on Economic Development, to Honorable Greg Abbott, Texas Attorney General (May 21, 2003) (on file with Opinion Committee) [hereinafter Request Letter].

On the other hand, section 43.902 of the Local Government Code provides, in relevant part:

> (a) Land on an island bordering the Gulf of Mexico that is not accessible by a public road or common carrier ferry facility may not be annexed by a municipality without the consent of the owners of the land.

> (b) The extraterritorial jurisdiction of a municipality does not include land on the island unless the owners of the land consent.

> . . . .

*Id.* § 43.902(a)-(b). You state that "[t]he residents of Long Island Village are claiming in part that Long Island is 'an island bordering on the Gulf of Mexico,' and, therefore, they assert the area they wish to incorporate would qualify under this aspect of the exception created by [section] 43.902 [of the] Local Government Code." Request letter, *supra* note 1, at 2. Thus, the question before us is whether Long Island, on which the Village is located, is "an island bordering the Gulf of Mexico." *See* TEX. LOC. GOV'T CODE ANN. § 43.902(a) (Vernon 1999).

An official map prepared by the Texas General Land Office is attached as an appendix to this opinion. This map also indicates that "Long Island" is located *in* the body of water designated as the "Laguna Madre." The Texas Supreme Court has held that courts may take judicial notice of the "general physiographic features" of a county. *Int'l-Great N. R.R. Co. v. Reagan*, 49 S.W.2d 414, 416 (Tex. 1932). In that case, the court "concluded that the map of Robertson county, made by the land office of the state of Texas, and the United States geological survey maps, may bring before us those facts which we judicially know." *Id.* Moreover, the Texas Supreme Court has observed that "[f]acts about well known and easily ascertainable geographical facts concerning counties are frequently judicially noticed," citing, as one example among many, that "[i]t was judicially known that Matagorda County is bounded by the Gulf of Mexico, *Giddings v. Day*, 84 Tex. 605, 19 S.W. 682 (1892)." *Barber v. Intercoast Jobbers & Brokers*, 417 S.W.2d 154, 158 (Tex. 1967). We must therefore determine whether the "Laguna Madre" is a part of the "Gulf of Mexico." If so, then Long Island is, under the terms of section 43.902 of the Local Government Code, "an island bordering the Gulf of Mexico." TEX. LOC. GOV'T CODE ANN. § 43.902(a) (Vernon 1999).

We note initially that section 11.013(a) of the Natural Resources Code declares that "[t]he gulfward boundary of each county located on the coastline of the Gulf of Mexico is the Three Marine League line as determined by the United States Supreme Court." TEX. NAT. RES. CODE ANN. § 11.013(a) (Vernon 2001). "The term 'coastline' as used in this subsection means the line of mean low tide along that portion of the coast which is in direct contact with *the open Gulf of Mexico*." *Id.* § 11.013(b) (emphasis added); *accord* 42 U.S.C. § 1301(c) (2000) ("the term 'coast line' means the line of ordinary low water along that portion of the coast which is in direct contact with the open sea and the line marking the seaward limit of inland waters"). Cameron County is "a county located on the coastline," and the entire southern portion of Cameron County includes Padre Island. *See* THE DALLAS MORNING NEWS, 2000-2001 TEXAS ALMANAC 148 (Mary G. Ramos ed., 1999).

A number of Texas cases have distinguished the body of water known as Laguna Madre from the Gulf of Mexico. In *Kenedy Memorial Foundation v. Dewhurst*, 90 S.W.3d 268 (Tex. 2002), the Texas Supreme Court declared:

> The Laguna Madre, translated "Mother Lagoon," whose waters were prescribed by Spain and Mexico to mark the disputed boundary, is a narrow estuary on the west side of Padre Island extending some 130 miles from Corpus Christi to Port Isabel. The Laguna Madre is open to the Gulf of Mexico at both ends but sheltered from the Gulf along its length by Padre Island. In many areas, including adjacent the Foundation's property, it is slightly above sea level. The presence and depth of water in most of the Laguna Madre is governed not by astronomic tidal forces from which it is insulated, like those exerted by the moon and sun, but by meteorological forces to which it remains open, like the wind and barometric air pressure. In much of the Laguna Madre, including the area in dispute, variations in water levels due to daily tidal forces are minuscule, masked almost entirely by variations caused by atmospheric forces. The water does not advance and subside daily, as one thinks of a shore facing the open sea. The wind can actually blow water uphill so that it is sometimes deeper at higher elevations than at lower ones. At places, the Laguna Madre is constantly inundated with seawater several feet deep, deep enough for waves and boats.

*Id.* at 271. The court in *Kenedy Memorial Foundation* thus cites numerous distinctions between the Laguna Madre and the Gulf of Mexico, including the fact that the Laguna Madre is a "narrow estuary," and the fact that "[t]he Laguna Madre is open to the Gulf of Mexico at both ends, but sheltered from [it] along its length by Padre Island." *Id.*

Other Texas cases support this view. In *Butler v. Sadler*, 399 S.W.2d 411 (Tex. Civ. App.–Corpus Christi 1966, writ ref'd n.r.e.), the court said:

> The Laguna Madre is a continuous body of water running from Corpus Christi Bay on the north to the Brazos-Santiago Pass on the south and connects with the Gulf of Mexico at both ends. On the east side of the Laguna Madre is a long strip of land called Padre Island which runs almost the entire length of the coast between Corpus Christi and Brownsville. *The island separates the Gulf of Mexico on the east and the Laguna Madre on the west.*

*Id.* at 413 (emphasis added). Likewise, in *Luttes v. State*, 324 S.W.2d 167 (Tex. 1958), the Texas Supreme Court described the Laguna Madre as a "long, narrow lagoon." It "lies between the mainland on the west and, on the east, the long, narrow, sandy island called Padre, the eastwardly side of which latter is the shore of the Gulf of Mexico." *Id.* at 168.

Although the Laguna Madre has been described as "an arm of the Gulf of Mexico," it is clearly different from, and not a part of, the body of water known as the Gulf of Mexico. *See Humble Oil & Refining Co. v. Sun Oil Co.*, 191 F.2d 705, 716 (5th Cir. 1951); *City of Weslaco v. Turner*, 237 S.W.2d 635, 637 (Tex. Civ. App.–Waco 1951, writ ref'd n.r.e.). Moreover, Texas statutory law distinguishes between the Gulf of Mexico and its arms and bays. Section 11.012(c) of the Natural Resources Code, for example, declares:

> The State of Texas owns the water and the beds and shores of the Gulf of Mexico and the arms of the Gulf of Mexico within the boundaries provided in this section, including all land which is covered by the Gulf of Mexico and the arms of the Gulf of Mexico either at low tide or high tide.

TEX. NAT. RES. CODE ANN. § 11.012(c) (Vernon 2001). We conclude therefore that the body of water known as the Laguna Madre is separate from, and not a part of, the body of water called the Gulf of Mexico.

Moreover, on April 1, 2002, John Haywood, attorney for the City, addressed a letter to Roger L. Payne, Executive Secretary of the United States Board on Geographic Names, inquiring whether Long Island borders the Gulf of Mexico.[2] The Board on Geographic Names, a division of the United States Geological Survey, "is a Federal body created in 1890 and established in its present form by Public Law in 1947. Comprised of representatives of Federal agencies, appointed for 2-year terms, the Board is authorized to establish and maintain uniform geographic name usage throughout the Federal Government." *See* U.S. DEP'T OF THE INTERIOR, U.S. GEOLOGICAL SURVEY, UNITED STATES BOARD ON GEOGRAPHIC NAMES, *available at* http://geonames.usgs.gov/bgn.html (last modified July 15, 2003). On April 17, 2002, Mr. Payne replied to Mr. Haywood as follows:

> This is in response to your inquiry regarding the "identity of waters bordering Long Island in Texas."
>
> The U.S. Board on Geographic Names defines Long Island as the following: a 2.6 km (1.6 mi) long island in Cameron County, Texas located *in* Laguna Madre. The island is approximately 152 m (500 ft) south of the community of Port Isabel.[3]

Thus, in the view of the federal agency charged with defining geographical entities, Long Island is located *in* the "Laguna Madre."

---

[2]Letter from John Haywood, P.C., to Roger L. Payne, Executive Secretary, United States Board on Geographic Names (Apr. 1, 2002) (on file with Opinion Committee).

[3]Letter from Roger L. Payne, Executive Secretary, United States Board on Geographic Names, to John Haywood, Attorney at Law (Apr. 17, 2002) (on file with Opinion Committee) (emphasis added).

It follows that, because the Laguna Madre is separate from, and not a part of, the body of water called the "Gulf of Mexico," and because Long Island is an island "located *in* Laguna Madre," Long Island is not "an island bordering the Gulf of Mexico." TEX. LOC. GOV'T CODE ANN. § 43.902 (Vernon 1999). As a result, the exception for islands bordering the Gulf of Mexico does not apply to Long Island. Long Island is accordingly within the extraterritorial jurisdiction of the City of Port Isabel, and Long Island Village may not incorporate without the consent of the City of Port Isabel.

## S U M M A R Y

Long Island, a spoil island located directly south of the City of Port Isabel, is located entirely within the Laguna Madre, a saltwater lagoon that is not a part of the Gulf of Mexico. The Village of Long Island is within the extraterritorial jurisdiction of the City of Port Isabel, and may not incorporate without the consent of the City of Port Isabel.

Yours very truly,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Rick Gilpin
Assistant Attorney General, Opinion Committee



# Long Island - Laguna Madre

OTH P100

Port Isabel

Queen Isabella State Fishing Pier

Isla Blanca Cabana

Brazos S

Ba
Ba

Port Isabel Channel

Long Island

Clark Island

South Bay Pass

Lower Rio Grande Valley NWR

**SOUTH BAY**

South Bay
Coastal Preserve

1:40,000